Suddoth v. Bryan.

---

HARRIET A. B. SUDDOTH, Respondent, v. WILLIAM S. BRYAN, Appellant.

St. Louis Court of Appeals, March 4, 1890.

1.   Practice, Trial : NUMBER OF NEW TRIALS.   When the verdict is not supported by substantial evidence, a new trial should be granted, notwithstanding that one new trial has already been granted to the defeated party on the ground that the verdict was against the weight of the evidence.

2. **Practice, Appellate.** It appearing that there had been a number of trials in this cause with the same result in each, that the verdict was without the support of substantial evidence, and that the juries in reaching their verdicts were influenced by their own ideas of the equities of the cause and wholly disregarded the instructions of the court, and it further appearing that the plaintiff was suing as a poor person and, therefore, not chargeable with costs, this cause was reversed with directions to the trial court to enter judgment for a specified sum, which was the largest amount for which a recovery was warranted by the evidence.

*Appeal from the St. Louis City Circuit Court.* — Hon. LeRoy B. Valliant, Judge.

Reversed and remanded (*with directions*).

*Boyle, Adams & McKeighan,* for the appellant.

*A. A. Paxson* and *Jos. S. Laurie,* for respondent.

Rombauer, P. J., delivered the opinion of the court.

On August 24, 1882, the defendant entered into a written contract with the plaintiff for the publication of a book, to be known as The Housekeeper's Encyclopedia, whereby, in consideration of five hundred dollars then paid to him, and five hundred dollars more to be paid upon the completion of this work, he agreed to publish one thousand copies of said book; said edition of one thousand copies to be completed in October, 1882. Plaintiff afterwards paid a further sum of three hundred dollars before the completion of the work, but defendant afterwards refused to carry out his contract, and plaintiff, treating it as rescinded, sued as for money had and received, seeking to recover back the amount thus obtained by defendant. She obtained judgment, but the same was reversed by this court upon the theory that her remedy was an action for damages for breach of the contract. *Suddoth v. Bryan,* 30 Mo. App. 37. In pursuance of said ruling

plaintiff dismissed said action and instituted the present suit on April 27, 1888. A trial was had before a jury on October 10, 1888, and a verdict rendered in favor of plaintiff for one thousand dollars. Upon defendant's motion for a new trial the court ruled that said motion would be sustained unless plaintiff would remit five hundred dollars. This the plaintiff declined to do, and the court thereupon granted a new trial assigning of record as the grounds of a new trial that "the amount of damages is against the weight of the evidence." On March 5, 1889, the cause again came on to be heard before the court and a jury on the same issues, and a verdict was rendered in behalf of plaintiff in the sum of one thousand and fifty dollars. Defendant's motion for a new trial was overruled. Hence, this appeal.

The petition states the contract, for the breach whereof the plaintiff sues, as follows:

"This agreement made and entered into this twenty-fourth day of August, 1882, by and between W. S. Bryan, publisher, and Mrs. H. A. B. Suddoth, both of St. Louis, Missouri, witnesseth:—

"That the said Mrs. Suddoth has prepared the manuscripts of a book on household and domestic economy, to be entitled The American Pictorial Home Book, or The Housekeeper's Illustrated Encyclopedia, or any other appropriate title that may be decided upon previous to the publication of said book; which said manuscripts she has placed in the hands of the said W. S. Bryan for publication, on the following conditions, namely:—

"The said W. S. Bryan agrees to make stereotyped plates of such parts of said manuscripts as may be required to make a book of not less than six hundred pages of 'long primer' type, to illustrate the same with eight colored lithograph plates of domestic scenes, to print one thousand copies of said book on good paper, to bind the same substantially and neatly in

Suddoth v. Bryan.

cloth, and to deliver to the said Mrs. Suddoth or her order any number of copies of said book that she may desire, at cost of manufacture.    The said W. S. Bryan further agrees to introduce and sell said book to his agents, and general agents, at the usual rate of discount, viz., forty, fifty and sixty per cent. from retail price, to keep accurate accounts of the receipts and expenses of handling said book, and to pay monthly to the said Mrs. Suddoth, her heirs or assigns, one-half the net profits arising from the sales of said books, so disposed of by him; the remaining one-half of the net profits to be retained by the said W. S. Bryan as remuneration for his time and labor in handling said book. It is understood and made a part of this agreement, however, that all books delivered to the said Mrs. Suddoth or her order shall be charged to her at actual cost of manufacture, and the said W. S. Bryan shall have no part or share of the profits arising from the sales of books so delivered to the said Mrs. Suddoth. The said book, embracing copyright, stereotyped plates, plates for illustrations, etc., shall be the property of the said Mrs. Suddoth.

"As security against loss in publishing said book, the said Mrs. Suddoth agrees to pay to the said W. S. Bryan, his heirs or assigns, the sum of one thousand dollars, one-half,—five hundred dollars,—on commencement of work upon said book, and the remainder,—five hundred dollars,—upon completion of the first edition of one thousand copies; said one thousand dollars to be entered upon the books to the credit of the said Mrs. Suddoth, and to be returned to her from the sales of said book after all the expenses of publishing the same shall have been paid.

"The said Mrs. Suddoth further agrees to read such proofs of said books, as may be required by the said W. S. Bryan, said proofs to be furnished to her free of cost.

Suddoth v. Bryan.

"It is further understood and agreed that the first edition of one thousand copies of said book shall be completed during the month of October, 1882, unless delayed by circumstances beyond the control of the said W. S. Bryan."

The petition further states that the contract was, subsequently, by mutual consent, modified so as to reduce the second payment of five hundred dollars to three hundred dollars, making the total amount to be put up by plaintiff as security eight hundred dollars instead of one thousand dollars; that the plaintiff performed all her obligations under said contract, but the defendant failed, in a number of particulars therein recited, to plaintiff's damage in the sum of twenty-five hundred dollars, for which, with interest and costs, the petitioner asks judgment.

The answer admits the original execution of the agreement, but denies that the contract was modified according to plaintiff's claim. It states that before the time had arrived for plaintiff to pay the last five hundred dollars, required by said contract, the plaintiff notified the defendant that she would not be able to pay more than three hundred dollars, whereupon, by mutual consent between the parties, the contract was so changed or modified as to release plaintiff from his obligation to publish one thousand copies, and leaving the number of copies to be completed to the judgment of the said defendant with reference to the demand which might exist for said book.

The answer then states that the defendant fully performed the contract so modified, and that there is due him on account of the performance of said contract, and the expenditures connected with the work of getting said manuscripts ready for publication, and reading proof, the sum of one hundred and seven dollars and fifty-seven cents, as per account therewith filed, and marked Exhibit A.

The itemized account, filed with the defendant's answer, shows expenditures amounting in the aggregate to thirteen hundred and fifty-six dollars and nineteen cents, and total receipts, including the eight hundred dollars paid by the plaintiff, of twelve hundred and forty-eight dollars and sixty-two cents, leaving the balance of one hundred and seven dollars and fifty-seven cents, which is the subject of defendant's counter-claim, or showing a net loss in the publication of the four hundred and ninty-four copies, which were published, of nine hundred and seven dollars and fifty-seven cents.

The errors complained of by the appellant are that the court misdirected the jury in its instructions, and that the damages assessed by the jury in their verdict for the breach of the contract in question are wholly unsustained by the evidence, and that the jury erred in a matter of law in wholly disregarding the evidence. There are other errors assigned in regard to the admission and exclusion of evidence, which we shall not discuss, as they find no support, either in the record or defendant's brief.

We may dispose of the errors assigned on instructions by stating that the question, as to what the rights of the parties were under the modifications of the original contract, as respectively claimed by them, were submitted by the court to the jury in a manner to which no just exception can be taken. In fact, the only complaint on that score, which is at all urged by the defendant in his brief, is that, if his version of the contract is the correct one, he was entitled, by way of counter-claim, to the excess of his expenditures over aggregate receipts. We do not so read the contract, whether modified according to the defendant's claim or not. The amount deposited by the plaintiff was, in either event, the only fund to which the defendant could look in case his expenditures exceeded the

receipts. The entire discussion, however, is a mere abstraction, as the jury did not find the modification of the contract as claimed by the defendant, but found it as claimed by the plaintiff, as their verdict conclusively shows. Had they found the former, their verdict, under the instructions of the court, would necessarily have been for the defendant.

This brings us to the only serious question in the case, namely, whether there is any substantial evidence to support the verdict for the amount rendered. One new trial had already been granted in this case on the ground that the amount of damages assessed was against the weight of the evidence, and, to have justified the trial court to grant another new trial, it must appear that the triers of the fact have erred in a matter of law, or that the jury were guilty of misbehavior.

The following propositions necessarily arise in this connection. Is the measure of damages in an action for breach of contract purely a question of law; if so, has the court correctly declared the law on that branch of the case, or have the jury clearly disobeyed the instructions of the court? It can admit of no question that any number of new trials may be granted when the jury either err in a matter of law, or when they are guilty of misbehavior. *State ex rel. Albers v. Horner*, 86 Mo. 73. And if the verdict in this case finds no support in the evidence, whatever, and the court correctly instructed the jury on the measure of damages, it necessarily follows that the jury have either erred in a matter of law, or have misbehaved.

What are proper elements of damages in any action is purely a question of law. *Morrison v. Yancey*, 23 Mo. App. 675. That proposition is elementary, and is not at all questioned by the plaintiff. Within the limits of the evidence showing facts which constitute proper elements of damages, the second verdict of the

jury for the same party became conclusive on the court; beyond those limits any number of verdicts cannot make the finding conclusive.

Upon the question of damages, the court gave the following instructions, which we number for more convenient reference:

"1.   The court instructs the jury that under the evidence the plaintiff cannot recover any damages against defendant for delay in publishing the book.

"2.   The court instructs the jury that in no case, if they find a verdict for the plaintiff, can they assess damages against the defendant in excess of the net profit, over and above all expenses, which the plaintiff would have received, if the whole one thousand books had been published.

"3.   Under the contract in question the defendant is not entitled to recover of the plaintiff for any excess, if any, in the outlay for the publication over and above the eight hundred dollars received by him, and the net proceeds of the sales of the books sold by him.   Therefore on the defendant's counter-claim you are instructed to find for the plaintiff."

While there was evidence of a delay of several months in completing the publication of the book, there was no evidence whatever that the plaintiff suffered any loss by the delay, and hence instruction number one was correct.   The terms of the contract fixed the rights of plaintiff's compensation to be derived thereunder, and hence instruction number two was correct.   That instruction number three, which was strictly in plaintiff's favor, was correct, appears by what has been said in a prior part of this opinion.   Hence we must conclude that the jury were correctly instructed on the question of damages.

There is no substantial evidence in the record challenging the correctness of the defendant's account, either on its credit or debit side, except in these particulars.   The defendant's witness Scammel, in roughly

itemizing the cost of a publication of five hundred volumes, puts the cost of paper at eighty-two dollars and fifty cents, while the defendant's account contains the charge of one hundred and sixty-eight dollars, paper, first edition. The inference is admissible, that when the paper was bought it was bought for a contemplated edition of one thousand copies, and, when only four hundred and ninety-four were actually published, the cost of paper remaining over was not credited to the other side of the account. But this seems to be the only item in the account, touching the incorrectness of which there is any substantial evidence. The work, as all the evidence shows, was done at ruling market rates or less, and the cost of such a publication alone, without the cost of bringing the book into market, is estimated by the defendant's witnesses all the way from eleven hundred and fifty dollars to fifteen hundred dollars, while the defendant's account makes it about thirteen hundred dollars, and the plaintiff has offered no evidence on the subject. It is, therefore, clear that in any view of the evidence, which the jury were warranted to take, the cost of publishing the first four hundred and ninety-four copies, and of bringing out the book substantially, consumed the eight hundred dollars, which the plaintiff advanced, and, in addition thereto, whatever was received as net returns from sales of the book.

Assuming, therefore, as we must, that the cost of bringing out and disposing of the first four hundred and ninety-four copies resulted in a net loss of eight hundred dollars, what evidence is there that the publication of the next five hundred and six copies would have resulted in a net gain of ten hundred and fifty dollars as plaintiff's share of the venture? The minimum cost of producing the additional copies, that is, printing and paper and binding, as shown by the evidence, would have been about fifty cents a copy, or two

hundred and fifty-three dollars for the additional five hundred and six copies, and, if every one of the books would have been sold by the defendant to his agents at one dollar and twenty-five cents per copy, the average price fixed by the contract, the amount realized would have been only six hundred and thirty-two dollars and fifty cents, or, deducting cost of production, three hundred and seventy-nine dollars and fifty cents, of which, under the terms of the contract, the defendant would have been entitled to one-half only.

The plaintiff contends that, under the terms of the contract, she was entitled to any number of copies she might desire at cost of manufacture, and that the defendant was not entitled to any part of the profits arising from the sale of the books so delivered to her. But this clause must be read in connection with other clauses of the contract giving the defendant the right to sell the books to his general agents at the usual rates of a discount of forty, fifty and sixty per cent. from retail price. Nor is there any evidence in the record that the plaintiff had sold any number of copies at two dollars and fifty cents, which she was unable to deliver, or that she ever called for any definite number of copies under this clause of the contract, or that she could have readily disposed of any given number of copies at that price, if they would have been furnished to her. The fate of the first edition of four hundred and ninety-four copies, if it leads to any admissible inference at all, leads to the contrary inference, and any verdict, based upon the plaintiff's ability to dispose of any given number of copies at retail price without cost, rests on the barest conjecture, and is opposed to all admissible inferences.

The conclusion is unavoidable, that in every one of these successive trials the jury, in substance, tried to make the plaintiff whole in accordance with their own idea of what the equities of the case demanded, and

totally disregarded the instructions of the court on the subject of damages. The amounts of the verdicts show that the jury gave to the plaintiff in substance the eight hundred dollars, which she had paid, with interest, after deducting what she received in books and material. They determined the damages on a theory, on which, under the views taken by this court when the case was first here, they could not be determined.

A due administration of the law demands that such a proceeding should be discountenanced. On the other hand, it is the interest of the commonwealth that there should be an end to litigation. There have been three trials of this cause, leading substantially to the same result, and, as the circumstances of each are such, that there is no probability that any number of them will lead to a result in harmony with the law and facts of all we deem it our duty to end the litigation. The trial court upon the second trial was of the opinion that, under the law and the evidence, damages not exceeding five hundred dollars could be sustained. The evidence at that trial was presumptively the same as at the last. We are of opinion that the outside limit of plaintiff's recovery under the evidence at the last trial, giving to her the benefit of all admissible inferences, cannot exceed five hundred dollars and interest. She is entitled to interest from date of the institution of the suit. If we affirm the judgment upon condition of her remitting the residue of the recovery, she may refuse to accede to the condition, necessitate a new trial and protract the litigation indefinitely, as she is prosecuting as a poor person, and is not charged with costs. Under these circumstances, the only just disposition we can make of the cause is to reverse the judgment and remand the case to the trial court with directions to enter a judgment for the plaintiff for the sum of five hundred and fifty dollars. All the judges concurring, it is so ordered.